<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MB IMPORTS, INC. et al.

                Plaintiff,

v.

T&M IMPORTS, LLC, et al.

                Defendants.

Civ. No. 10-3445 (ES)

**O P I N I O N**

*Appearances by:*

ARCHER & GREINER, P.C.
THOMAS J. HERTEN, ESQ.
Court Plaza South, West Wing
21 Main Street – Suite 353
Hackensack, New Jersey 07601

    *Attorneys for Plaintiffs,*

SPECTOR GADON & ROSEN, PS
JENNIFER WARD, ESQ.
1635 Market Street, 7th Floor
Philadelphia, PA 19103

    *Attorneys for Defendant TrePunti Corporation*

**<u>DEBEVOISE, Senior District Judge</u>**

      This case arises out of the alleged false and/or misleading advertising of the nature and contents of a competitor's lemon and lime juice products, and the continued distribution of said

products. For the reasons set forth below, the motion to dismiss Defendant TrePunti Corporation is DENIED.

## I. BACKGROUND

The facts submitted in the Amended Complaint are summarized below to the extent that they are relevant to the instant motion.[1] Plaintiffs, MB Imports, Inc. ("MB Imports") and Ronald Marks, president and owner of MB Imports and an individual consumer of the competitor's brand (collectively, "Plaintiffs"), import and distribute lemon and lime juice products in the United States under the brand name of "Sicilia." (Am. Compl. ¶ 22.)

Before the Court is a motion to dismiss submitted by one of the listed defendants, TrePunti Corporation ("TrePunti"). TrePunti is the United States brokerage sales agent for Eurofood, S.r.L. ("Eurofood"), the Italian manufacturer of the competitor line of lemon and lemon juices under the brand name "Tantillo." (Id. ¶¶ 8, 16.) The juice products at issue are labeled "Tantillo Sicilian Lime Juice", "Tantillo Lime Juice", and "Tantillo Sicilian Lemon Juice."

TrePunti imports, distributes, and sells the lemon and lime juices from and on behalf of Eurofood to defendant Colavita USA, Inc. ("Colavita") for marketing and sale to defendant T&M Imports, LLC ("T&M") and defendant Tony Tantillo's customers. (Id. ¶ 28.) Defendant Tony Tantillo is the personality behind the products, and uses his persona and name to advertise the products throughout the United States, on his online website and in various television appearances. Mr. Tantillo's website is owned and operated by defendant Farm Fresh, LLC.

---

[1] For purposes of this motion, the Court accepts the factual allegations in the Amended Complaint as true, and all reasonable inferences are drawn in favor of the plaintiffs. See Morse, infra at 7.

On May 17, 2012, the Court granted Plaintiffs' motion for leave to file an Amended Complaint to add Colavita and TrePunti as defendants due to facts revealed through supplemental discovery showing their electronic correspondences on matters related to the allegations. (See Order, ECF 88; Pls.' Br. in support of motion for leave to file first amended complaint, ECF 79; see also Herten Decl., Ex. N, ECF 80-14.).

The Amended Complaint alleges that TrePunti collaborates with Colavita, T&M, Mr. Tantillo, and Eurofood, to determine the composition and labeling of the Tantillo lemon and lime juices that are marketed and sold in the United States. (Id. ¶¶ 8, 28.) Specifically, the Amended Complaint asserts that the defendants packaged, marketed, advertised, and sold Tantillo juices to customers based on deliberate false and/or misleading representations regarding the composition and quality of Tantillo lemon and lime juices. Plaintiffs argue that these misrepresentations caused supermarket chain Safeway, Inc. ("Safeway") to substitute Sicilia juices for Tantillo juices, resulting in MB Imports's loss of sales to customers, prospective customers, loss of business for distribution in Safeway's food stores, and loss of income and expected income from the ongoing business relationship with Safeway.

Accordingly, the Amended Complaint asserts claims for False Advertising Under the Lanham Act (count 1); violation of the Consumer Fraud Act, N.J.S.A. 56:8-2 et seq. (count 2); Unfair Competition, N.J.S.A. 56:4-1 (count 3); Tortuous Interference (count 4); and violation of New Jersey's Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 et seq. (count 5). Plaintiffs' request includes injunctive relief, declaratory judgment, damages, attorney's fees and costs of suit.

The substantive factual assertions regarding the alleged mislabeling of the Tantillo juices are not directly at issue here. In sum, Plaintiffs allege that the representations of the contents of

Tantillo Sicilian Lime Juice, Tantillo Lime Juice, and Tantillo Sicilian Lemon Juice, are false and misleading, based on the results of analyses conducted by two independent laboratories.

With respect to Tantillo Sicilian Lime Juice, these analyses indicate the product is mostly composed of lemon juice, with added water and citric acid that are not found in a pure squeezed lime. (Am. Compl. ¶¶ 31-35.) Plaintiffs thus challenge the representations made on the front label which represents that it is a Product of Italy, Sicilian Lime Juice, Not From Concentrate, and All Natural, and the back label which lists the ingredients as "Lime Juice (99.97%; Natural Flavor; Potassium Metabisulfites (Antioxidant E224) CONTAINS: SULFITES." (Id. ¶¶ 29-31.)

After commencement of this action, the lime juice was renamed "Tantillo Lime Juice." (Id. ¶¶ 36, 38.) The ingredients now state composition of Mexican lime juice (99.97%), Natural Flavor, Potassium Metabisulfites (Antioxidant E224), and CONTAINS: SULFITES. The front label still claims that it is a Product of Italy, Not from Concentrate, and All Natural. Plaintiffs' argue that the new label is still misleading, for reasons including that the product still contains added water and is not pure juice not from concentrate (Id. ¶¶ 36-37, 39-40), and that the new label still falsely represents that the product is one of Italy but is actually composed of 99.97% Mexican Lime Juice, as indicated in the ingredients list. (Id. ¶ 41.)

Similarly, Plaintiffs challenge representations regarding the nature and composition of Tantillo Sicilian Lemon Juice. The front label indicates that the product is a Product of Italy, Sicilian Lemon Juice, Not from Concentrate, and All Natural. (Id. ¶ 45.) The back label lists the ingredients as: "Lemon Juice (99.97%), Natural Flavor, Potassium Metabisulfites (Antioxidant E224) CONTAINS: SULFITES." (Id. ¶ 46.) However, the analyses conducted by Plaintiffs indicate that the lemon juice contains added water and citric acid that are not naturally found in a pure juice obtained by squeezing lemons, and that the product contains very little juice from

Italian or Sicilian lemons. (Am. Compl. ¶¶ 47-48.) Plaintiffs purport that analyses taken after the defendants changed the labeling on the lime juice product indicate that the lemon juice is still misrepresented because it still contains added water and non-fruit citric acid, and is not derived from lemons of Italian, Sicilian, or Mediterranean origin. (Id. ¶ 52.)

Overall, Plaintiffs allege that the collective misrepresentations of the nature and composition of Tantillo lime and lemon juices damage the reputation and goodwill of MB Imports and the consuming public, and were designed to entice consumers, customers, distributors and retailers to purchase Tantillo products over Sicilia products. (Id. ¶¶ 42-44, 49-51, 89.) Specifically, Plaintiffs allege that the defendants' misrepresentations regarding the primary ingredients of Tantillo juices imply that they are of the same or superior composition and quality as Sicilia juices, which they are not. (Id.) Further, Plaintiffs allege that because the product contains juice inferior to Sicilia's, Tantillo can charge less for their product than competitors, while reaping substantial profit. (Id. ¶¶ 43, 50.) Plaintiffs contend that the misrepresentations are in violation of various federal and state laws, including for misbranding and economic adulteration. Plaintiffs also note that despite their awareness of these misrepresentations, Defendants continue to disseminate the false and/or misleading information.

Last, Plaintiffs argue that Defendants wrongfully interfered with MB Imports' business relationship with Safeway, Inc. (Id. ¶ 86.) Specifically, Plaintiffs submit that TrePunti and the other defendants met and corresponded with Safeway many times in order to wrongfully persuade Safeway to substitute the Tantillo juices for the Sicilia ones. (Am. Compl. ¶ 86.) Plaintiffs argue that the defendants provided Safeway with product samples of the Tantillo juices which included the false and/or misleading labeling and made false and/or misleading representations to Safeway about the composition and nature of the Tantillo product. (Id. ¶ 88.)

This false information allegedly misled Safeway to believe that Tantillo products are comparable in nature and quality to Sicilia, which they are not. (Id. ¶¶ 83, 88.) Further, Plaintiffs submit that the defendants obtained Safeway's income and marketing information about Safeway's sales of Sicilia juices, and that the information was improperly then used to set the price for the inferior Tantillo juice products in such a manner as to undercut the prices which MB Imports provided to Safeway for Sicilia juices. (Id. ¶ 87.)

An exposition of TrePunti's involvement is in order, being that its participation is a central issue here. These facts are referenced in both Plaintiffs' and TrePunti's briefs on the instant motion (TrePunti's MTD Br. 2, n.1.; Pls.' Opp. Br. at 37, n. 3), and are submitted in full in relation to the previously granted motion for leave to add TrePunti as a defendant in this case (Herten Decl., Ex. N.)[2]

The factual assertions regarding TrePunti's alleged role in the challenged representations are based on electronic correspondences garnered through discovery. First, on October 29, 2010, Joe Profaci of TrePunti sought the approval of Mickey Colombo of Colavita, of the new Tantillo Lime Juice Label. In response, Mr. Colombo approved the label, and sought advice from Mr. Profaci regarding whether the label should indicate that the limes would originate from Sicily or Mexico. (Id. at Ex. N – 1, Tantillo Defs 02987.) In February 2011, a second electronic correspondence, between Mr. Profaci of TrePunti and Mr. Danilo Mangano of Eurofood, indicates that Mr. Profaci communicated with both Mr. Mangano and Mr. Colombo to change the back label of the Tantillo lime juice to say "Product of Mexico," and collaborated on the number of the previous lime juice labels in stock. (Id. at N-2, Tantillo Defs 02981-02982.) A

---

[2] Consideration of these facts is proper herein, as TrePunti is sufficiently "on notice of the content of the document, and [thus] the need for a chance to refute evidence in greatly diminished." See Pension Benefit Guar. Corp. v. White Consol. Industries, 998 F.2d 1192, 1196-97 (3d Cir. 1993), discussed infra at 9.

6

third electronic correspondence between Mr. Profaci, Mr. Mangano, and Mr. Colombo, took place on or around June 23, 2011, regarding the labeling of the country of origin of the lime juice and whether to specify "Lime juice from concentration." (Id. at N-3, Tantillo Defs 02968-02975.) While Mr. Profaci did not provide a response in this particular correspondence chain, he is carbon-copied within it. (Id.) A fourth electronic correspondence between the three men took place in July 2011. Therein, Mr. Profaci directs Mr. Mangano, in coordination with Mr. Colombo, to use lime juice labels that specify that they are made from concentrate. (Ex. N-4, Tantillo Defs 02874.)

The motion currently before the Court is an eleven-page motion to dismiss the Amended Complaint filed by TrePunti, on the grounds that the factual allegations submitted are mere conclusory statements or recitations of the elements of the stated causes of action. (Def.'s Br. 7.) Plaintiffs have entered a forty-page opposition brief. It is noteworthy that Trepunti has not submitted a reply brief. The motion is decided on the papers.

## II. DISCUSSION

### A. Standard of Review

A motion to dismiss is reviewed pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal of a claim for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court's inquiry, however, "is not whether the plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the Rule 12(b) (6) standard in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007). The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." In contrast, Twombly held that "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." 550 U.S. at 545, 570. The plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. at 1949. This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (internal citations omitted).

When assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. Thus, the Twombly Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citations omitted). Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S.Ct. at 1950. Thus, "a court considering a motion to dismiss can choose

to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

A district court deciding a motion to dismiss generally does not consider material beyond the pleadings. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Industries, 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042 (1994). Typically, when a court does rely on matters outside of the pleadings, it must convert the motion to dismiss into a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and provide all parties with a reasonable opportunity to present all material pertinent to the motion. See Fed. R. Civ. P. 12(d). This rule allows the plaintiff an opportunity to respond to any extraneous documents that the court considers. Pension Benefit, 998 F.2d at 1196. An exception to the general rule exists, however, so that a court may consider extraneous documents to which a plaintiff refers in the complaint or on which he claims in the complaint were based without converting the motion to dismiss into one for summary judgment. Burlington Coat Factory, 114 F.3d at 1426; Pension Benefit, 998 F.2d at 1196. The rationale behind the exception is that, when a complaint refers to or relies on the document, "the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished." Pension Benefit, 998 F.2d 1192 at 1196-97.

Here, supplemental discovery revealed TrePunti's electronic communications and served as a basis for the Court's grant of leave to amend the complaint to add TrePunti as a listed defendant. Additionally, this material was also alluded to in both parties' briefs on the instant motion. TrePunti being on sufficient notice of the content of the material and having an

9

opportunity to refute the evidence, the Court includes the extraneous documents its analysis on whether the factual contentions allow a reasonable inference of liability.

### B. Analysis

In the instant motion to dismiss, TrePunti argues that "the Amended Complaint simply lumps TrePunti with the other defendants in conclusory factual statements only to mirror essential elements of the various statutes comprising the five counts of the Complaint." (Def.'s MTD Br. at 4.) TrePunti contends that the Amended Complaint "contains absolutely no specificity regarding the independent basis for liability against TrePunti." (Id. at 3.)

Specifically, TrePunti argues that the Amended Complaint fails to: (1) delineate the specific actions alleged taken by TrePunti; (2) state information that would permit a reasonable assessment relating to whether any of the parties has standing to sue or be sued; (3) state the jurisdiction whose common law should be applied to the tort alleged to have been committed; or (4) aver the temporal periods in which TrePunti's actions took place. (Id. at 7.) TrePunti cursorily raises, again with limited to no factual or legal explanation, a statute of limitations defense in a brief footnote and twice in its brief.

From the outset, Rule 8(a) does not require "detailed factual allegations." Twombly, 550 U.S. at 55. As discussed above, to survive a motion to dismiss, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation." See Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).

Here, the factual allegations asserted against TrePunti are clearly laid out in the Amended Complaint and further supported by the electronic communications upon which the Amended Complaint is based and to which the parties' briefs in the instant motion refer – that TrePunti

participated in the composition, labeling, importation, distribution and sale of the Tantillo products in question, in its integral role as the United States agent for the Italian manufacturer of Tantillo juices. The following discussion outlines the five causes of actions raised in light of these and other factual allegations to determine the plausibility of the claims.

1. *Section 43(a) of Lanham Act, 15 U.S.C. 1125(a)*[3]

The Lanham Act is the primary federal trademark statute. To state a claim under the Lanham Act, a plaintiff must plead:

> 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods travelled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

---

[3] 15 U.S.C. § 1125(a)(1) provides:

> (a) Civil action.
>   (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>     (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>     (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>    shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

11

Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc., 653 F.3d 241, 248 (3d Cir. 2011) (citing Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc., 19 F.3d 125, 129 (3d Cir. 1994)).

Lanham Act liability is assessed at various stages of the product supply chain, including for manufacturers, sellers, or distributers. See e.g., Zino Davidoff SA v. CVS Corp., 571 F.3d 238, 241 (2d Cir. 2009) (retailer is liable under Section 43(a) of Lanham Act for selling counterfeit competing goods); Eppendorf-Netheler-Hinz Gmbh v. Ritter Gmbh, 289 F.3d 351 (5th Cir. 2002) (distributor and manufacturer of competing goods is liable for Lanham Act violation).

The factual allegations here clearly assert that TrePunti was part and parcel of a supply chain of the product in question, and moreover was integral in the direct decision-making of the labeling and marketing of the product's label. Further, the Tantillo juices were in the interstate commerce stream. The factual allegations support Plaintiffs' claims that the alleged deception may cause customers to switch to Tantillo juices under the mistaken notion that they are similar in nature to Sicilia juices although more affordable, resulting in declining sales and loss of goodwill suffered by MB Imports. The motion to dismiss the Lanham Act claim is therefore denied.

2. *New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2*

The New Jersey Consumer Fraud Act renders unlawful an "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in

connection with the sale or advertisement of any merchandise . . . whether or not any person has in fact been misled, deceived or damaged thereby."

TrePunti disavows applicability of the statute, with repeated argument that Plaintiffs have failed to provide any detail relating to actions taken by TrePunti. (Def.'s Opp. Br. at 9.) However, the alleged misrepresentations are specifically detailed in paragraphs 29 through 52 of the Amended Complaint. Taken together with various sections of the Amended Complaint suggesting TrePunti's integral role in the distribution supply chain, and the electronic communications, a reasonable inference can be drawn of TrePunti's liability for unlawful practices pursuant to the New Jersey Consumer Fraud Act.

3. *New Jersey Unfair Competition Law, N.J.S.A. § 56:4-1*

The New Jersey Unfair Competition Law provides that "[n]o merchant, firm or corporation shall appropriate for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals." The New Jersey Unfair Competition Law "is the statutory equivalent of Section 43(a)(1) of the Lanham Act and the analysis for trademark infringement under New Jersey common law is the same as under Section 43(a)(1)." Harlem Wizards Entm't Basketball, Inc. v. NBA Props., Inc., 952 F. Supp. 1084, 1091 (D.N.J. 1997). For the reasons stated in the analysis above regarding the Lanham Act, the motion to dismiss the unfair competition claim is denied.

4. *New Jersey Truth-In-Consumer Contract, Warranty And Notice Act, N.J.S.A. § 56:12-14 et seq.*

N.J.S.A. § 56:12-15 provides that "[n]o seller . . . shall . . . in the course of his business offer to any consumer or prospective consumer . . . or give or display any written consumer . . . notice . . . includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller . . . as established by State or Federal law at the time the offer is made

or the consumer . . . notice is given or displayed. Consumer means any individual who buys . . . any . . . property . . . which is primarily for personal, family or household purposes."

Thus, in order to raise a claim under the Act, a plaintiff must show that: (1) the plaintiff is a consumer within the statute's definition; (2) the defendant is a seller; (3) the defendant (a) offers or enters into a written consumer contract, or (b) gives or displays any written consumer warranty, notice, or sign; and (4) the offer or written contract, warranty, notice or sign included a provision that violates any clearly established legal right of a consumer or responsibility of a seller. See id.; see also Watkins v. DineEquity, Inc., 2012 U.S. Dist. LEXIS 122677, 6-7 (D.N.J. Aug. 28, 2012); Smith v. Vanguard Dealer Servs., LLC., 2010 N.J. Super. LEXIS 3052, at *5-6 (App. Div. 2010).

Here, Plaintiffs raise a plausible claim based on its showing that Mr. Marks is a consumer and prospective consumer of TrePunti juices; that TrePunti played a role in the composition, labeling, marketing importation, distribution, and sale of the juices at issue, rendering it a seller under the Act; that TrePunti displayed or sold the products in the course of business; and that the subject matter of the labels may violate state and federal law and regulations. At this stage of review, a reasonable inference can be drawn that TrePunti is liable for the wrongs alleged.

*5. Tortious Interference Claim*

Plaintiffs submit that its contracts for the sale and distribution of Sicilia juices were compromised by the defendants' actions. Specifically, Plaintiffs argue that defendants, including TrePunti, intentionally interfered with the prospective advantages of MB Imports' business relationships by falsely and misleadingly marketing Tantillo juices, such as to cause wholesalers and retailers to breach contracts with MB Imports, and to sell the allegedly inferior and cheaper Tantillio juices in replacement of Sicilia juices. (Am. Compl. ¶ 125-30.)

To establish a cause of action for tortuous interference with existing or prospective contractual relations under New Jersey law, four elements need be met: (1) the complaint must allege facts that show some protectable right – a prospective economic or contractual relationship; (2) the complaint must allege facts claiming that the interference was done intentionally and with malice . . . defined to mean that the harm was inflicted intentionally and without justification or excuse; (3) the complaint must allege facts leading to the conclusion that the interference caused the loss of a prospective gain; (4) the complaint must allege that the injury caused damage. MacDougall v. Weinchert, 144 N.J. 380, 404 (1996) (referencing Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739 (1989)).

First, Plaintiffs plead that for the previous nine years, MB Imports had an existing contract with Safeway for the sale and distribution of Sicilia juices. (Am. Compl. ¶¶ 81, 126.) They further plead that MB Imports received economic advantages from that contractual relationship, and that it had a reasonable expectation in the continued advantages of the relationship. (Id.)

Second, Plaintiffs allege that defendants' interference, including TrePunti's, caused wholesalers and retailers to breach contracts with MB Imports to sell an inferior and less expensive product. (Am. Compl. ¶ 128.) The New Jersey Supreme Court has found that the test prescribed by the Restatement (Second) of Torts § 766B (1979) is appropriate to the determination of malice in an intentional interference claim.

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

15

>  (b) preventing the other from acquiring or continuing the
>  prospective relation.

See Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 752 (1989); see also MacDougall, 144 at 403-405. The Restatement provides a balancing test with consideration of eight factors for determining whether interference is improper, and therefore pertinent to the malice standard. Id. at 404; Restatement (Second) of Torts § 767 (1979). The factors are: (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the other with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties. Restat. 2d of Torts, § 767.

  The Plaintiffs have plead sufficient facts to meet the malice requirement at this stage of review. Along with TrePunti's direct involvement with the labels at issue, the defendants are alleged to have obtained Safeway's income and marketing information about its sales of Sicilia, which were then allegedly used to undercut the prices of Sicilia juices. (Am. Compl. ¶¶ 86-87). Furthermore, the wrong is still allegedly at issue, since after notice of the analyses made of the products, the juices are still labeled and distributed in a manner contended. (Am. Compl. ¶¶ 76-78.)

  The third and fourth elements to the claim are factually plead with sufficiency, as outlined in the background section above, and are not seriously contested by TrePunti. TrePunti's sole argument is that "the claims are not sufficiently delineated so as to permit any decision to be made as to whether Defendant actually did engage in such unlawful actions, whether a temporal bar could be raised to all or some of Defendant TrePunti's actions or whether

16

other affirmative defenses could properly be made." (Opp. Br. at 10.)  The Court finds to the contrary.  The Amended Complaint and the underlying briefs indeed state a claim to relief above the speculative level.  The motion to dismiss the tortuous interference claim is therefore denied.

### III.  CONCLUSION

For the foregoing reasons, TrePunti's motion to dismiss Plaintiffs' Amended Complaint is DENIED.

The Court will enter an order implementing this opinion.

**/s/ Dickinson R. Debevoise**
DICKINSON R. DEBEVOISE, U.S.S.D.J.

November 28, 2012