**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| MB IMPORTS, INC. and RONALD MARKS, | |
| Plaintiffs, | Civil Action No. 10-3445 (ES) (JAD) |
| v. | Opinion |
| T&M IMPORTS, LLC; TONY TANTILLO, individually; FARM FRESH, LLC; and COLAVITA USA, INC., | |
| Defendants. | |

**SALAS, DISTRICT JUDGE**

Pending before the Court is Defendants T&M Imports, LLC ("T&M Imports"), Tony Tantillo ("Tantillo"), Farm Fresh, LLC ("Farm Fresh") and Colavita USA, LLC's ("Colavita") (collectively "Defendants") motion for summary judgment.[1] (D.E. No. 197).

Having considered the submissions made in support of and in opposition to Defendants' motion, the Court decides this matter without oral argument. *See* Fed. R. Civ. P 78(b). For the reasons set forth below, the Court grants-in-part and denies-in-part Defendants' motion for summary judgment.

---

[1] On December 18, 2016, MB Imports ("MB Imports" or "Plaintiff"), Ronald Marks ("Marks") (collectively "Plaintiffs"), and Defendant Trepunti Corporation ("Trepunti") jointly stipulated the dismissal *with prejudice* of all claims against Trepunti. (D.E. Nos. 203-04). As such, the Court does not address claims against Trepunti in resolving Defendants' motion.

I.  **BACKGROUND**

   A. **Facts[2]**

      1. **MB Imports**

Since its incorporation in 2000, MB Imports has been importing and selling *Sicilia* brand lemon and lime juice products (the "*Sicilia* juices") in the United States. (D.E. No. 201, Ronald Marks Deposition 1 ("RM Dep. 1") at 17:17-20, 22:17-23:4). MB Imports began selling the *Sicilia* juices to supermarkets operated by the Safeway Corporation ("Safeway") between 2001 and 2003. (*Id.* at 66:19-67:21). For many years, *Sicilia* juices were the only squeezable lemon and lime juices sold in Safeway's produce department. (*Id.* at 121:6-9).

      2. **T&M Imports and Colavita**

T&M Imports markets and sells a variety of food products under the *Tantillo* brand, including balsamic vinegar, olive oil, as well as the lemon ("*Tantillo* lemon juice") and lime juices ("*Tantillo* lime juice") (collectively,"*Tantillo* juices") at issue in this litigation. (D.E. No. 197, Tony Tantillo Dep. ("TT Dep.") at 17:18-18:3, 24:12-25:9). T&M Imports purchases many of its products through Colavita, a distributor and importer of specialty foods. (*Id.* at 26:6-24). Tantillo is an owner and President of T&M Imports. (*Id.* at 22:5-13).

In 2009, Colavita learned of an opportunity to import a lemon juice product from Eurofood S.r.l. ("Eurofood"), a citrus produce company located in Sicily, Italy. (*Id.* at 25:17-19, 72:8-11, 84:1-4; D.E. No. 197, Michael Colombo Deposition ("MC Dep.") at 15:23-25). Colavita discussed Eurofood's lemon juice product with T&M Imports and later provided T&M Imports with samples of it. (TT Dep. at 25:17-19, 61:25-63:1; MC Dep. at 15:24-25, 17:25-18:1).

---

[2]   The Court incorporates by reference the facts established in the Court's September 30, 2015 Opinion (D.E. No. 186).

2

After receiving the lemon juice samples, Tantillo contacted T&M Imports' food broker, Elizabeth Bunch ("Bunch") to discuss presenting the lemon juice sample to Safeway. (D.E. No. 197, Elizabeth Bunch Deposition ("EB Dep.") at 23:17-24:5). Tantillo and Bunch then arranged a meeting with Safeway's representatives and prepared a one-page sales sheet stating the price and promotional information for the sample. (*Id.* at 25:25-28:1).

### 3. Safeway Discontinues *Sicilia* Juices and Begins Offering *Tantillo* Juices

In November 2009, Tantillo and Bunch met with Safeway representatives to discuss the *Tantillo* lemon juice. (*Id.* at 27:18-28:4). They discussed the product's cost, suggested retail price, margin, and how the product could be promoted. (*Id.* at 28:6-9). They also discussed the potential for selling lime juice, but no lime samples or sales sheet were provided during this meeting. (*Id.* at 29:1-3; TT Dep. at 74:24-75:7). Tantillo later communicated to Safeway that, in addition to lemon juice, T&M Imports could also supply Safeway with lime juice. (TT Dep. at 66:19-68:8). Safeway representatives do not recall receiving a proposed label for the *Tantillo* juices during this meeting. (D.E. No. 197, Kevin Cooper Dep. ("KC Dep.") at 78:18-22).

Safeway analyzed its costs and potential savings, and discussed risk scenarios relating to consumer sales. (D.E. No. 197, Keven Michael Dep. ("KM Dep.") at 47:5-19). On December 9, 2009, Safeway contacted Bunch to see if T&M Imports could "sharpen its pencil" on the *Tantillo* juices. (EB Dep. at 31:18-19; TT Dep. at 66:11-18). Bunch, in turn, contacted T&M Imports about reducing its price on the product, which T&M Imports later approved. (EB Dep. at 32:3-5; TT Dep. at 66:17-18). When Bunch confirmed the reduced price with Safeway, it agreed to carry the *Tantillo* juices. (EB Dep. at 32:3-10).

Safeway representatives stated that Safeway was interested in selling the *Tantillo* juices because of the name-brand recognition, price, and Defendants' willingness to engage in product

3

promotions (and not due to any representations about the product's quality, country of origin, or anything relating to their labels). (*See e.g.*, KC Dep. at 47:20-48:12, 65:6-23).

After deciding to carry *Tantillo* juices, Safeway representatives met with MB Imports' food broker, Maddan & Company ("Maddan"), to discuss altering the existing cost structure and request promotional funding. (*Id.* at 62:3-63:21). MB Imports rejected Safeway's requests for cost concessions and promotional support. (D.E. No. 197, Kevin Michael Dec. ¶ 9).

Safeway discontinued orders for the *Sicilia* juices in January 2010 and stopped selling the juices altogether by March 2010. (D.E. No. 201, Plaintiff's Response to Defendants' Statement of Material Facts ¶ 71). On February 16, 2010, Colavita made purchase orders for *Tantillo* juices for Safeway, and Eurofood began manufacturing *Tantillo* juices in March 2010. (D.E. No. 201, Plaintiff's Statement of Material Facts ("Pl. SMF") ¶¶ 89, 129).

### 4. *Tantillo* Juices' Labels and Laboratory Tests

The front label of *Tantillo*'s lemon juice stated "Product of Italy," "Sicilian Lemon Juice," "Not from Concentrate," and "All Natural." (D.E. No. 201, LisaAnne Bicocchi Dec. ("LB Dec.") Ex. 2). The back label listed ingredients, including "Lemon Juice (99.97%)" and "Potassium Metabisulfites (Antioxidant E224)." (*Id.*). The front of *Tantillo*'s lime juice labels stated "Product of Italy," "Sicilian Lime Juice," "Not from Concentrate," and "All Natural." (*Id.*). The back label listed ingredients that include "Lime Juice (99.97%)" and "Potassium Metabisulfites (Antioxidant E224)." (*Id.*).

In March 2010, Marks, president and owner of MB Imports, directed Maddan to purchase and mail him eight bottles of both *Tantillo*'s lemon and lime juice so that he could have the samples sent to laboratories for testing. (RM Dep. 150:14-152:7). Marks kept two of the *Tantillo* juice bottles and mailed the rest to his suppliers in Europe who, in turn, sent them to a German lab for

4

testing. (*Id.* 89:2-14, 151:17-20). Laboratory tests indicated that *Tantillo* lemon juice contained added water, added non-fruit citric acid, and are not dervived from lemons of Italian or Sicilian descent. (LB Dec. Exs. 26-27). Laboratory tests also indicated that *Tantillo*'s lime juice consisted of mostly lemon juice, added water, and non-fruit citric acid. (*Id.*). The tests further concluded that the lime juice could not be "Sicilian" because there was no commercial lime juice exportation from Italy. (RM Dep. 22:8-13).

Upon receiving these test results in May 2010, Marks reported them to the Food and Drug Administration and various media outlets. (RM Dep. 24:2-25:24, 79:1-14). Also in May 2010, MB Imports and Maddan arranged a meeting with Safeway to reveal their test results, but Safeway continued to sell *Tantillo* juices. (*Id.* at 92:4-14).

On June 7, 2010, Marks engaged legal counsel to pursue claims against T&M Imports and Tantillo. (D.E. No. 197, Keith D. McDonald, Dec. Ex. V).

### B. Procedural History

MB Imports and Marks filed a Complaint on July 7, 2010 against T&M Imports, Tantillo, and Farm Fresh. (D.E. No. 1). These Defendants filed an Answer on September 10, 2010. (D.E. No. 35).

On May 18, 2012, Plaintiffs filed an Amended Complaint that added Colavita as an additional Defendant and asserted: (i) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a), on behalf of MB Imports against Defendants (Count One); (ii) violations of New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-2 *et seq.* on behalf of Marks against Defendants (Count Two); (iii) unfair competition in violation of N.J.S.A. 56:4-1 *et seq.* on behalf of MB Imports against Defendants (Count Three); (iv) tortious interference with a business relationship on behalf of MB Imports against Defendants (Count Four); (v) and violation of the New Jersey

Truth-in-Consumer Contract, Warranty, and Notice Act, N.J.S.A. 56:12-14 *et seq.*, on behalf of Marks against Defendants (Count Five). (D.E. No. 89, Amended Complaint ("Am. Compl.")).

On August 17, 2012, Defendants filed an Answer to the Amended Complaint, and asserted six counterclaims: (i) product disparagement (Counterclaim One); (ii) defamation (Counterclaim Two); (iii) tortious interferences with T&M and Tantillo's contractual relationships and with their prospective economic and contractual business relationships, respectively (Counterclaim Three and Four); (iv) false advertising in violation of the Lanham Act stemming from MB Imports' statement that *Sicilia Lime Juice* is "Imported from Italy" is false or misleading because no limes from Italy are used in the production of the juice (Counterclaim Five); and (v) false designation of origin in violation of the Lanham Act in connection the use of the *Sicilia* name on the lime juice. (D.E. No. 105, Answer ¶¶ 16-43).

Discovery concluded on February 17, 2014. (D.E. No. 139). On September 3, 2014, Defendants filed their initial motion for summary judgment. (D.E. No. 168). On September 4, 2014, Plaintiffs filed a cross-motion for summary judgment. (D.E. No. 169). On September 4, 2014, Defendants opposed Plaintiffs' cross-motion for summary judgment. (D.E. No. 172).

On June 2, 2015 and September 30, 2015, the Court granted-in-part and denied-in-part both parties' motions, resulting in the dismissal of all of Defendants' counterclaims and all but two of Plaintiffs' claims. Those remaining claims are: (1) violation of the Lanham Act based on misrepresentations made to consumers (Count One); and (2) violation of the New Jersey Unfair Competition Statute, based on misrepresentations made to consumers (Count Three). (D.E. No. 186 at 18:16-19). The Court explained that these claims remained because "there are disputed issues of fact regarding whether a consumer would consider the alleged misrepresentations material to his or her purchase; whether the current lemon juice label and previous lime juice labels

still being used in advertising are false or misleading;" and "whether, if false and misleading, the representations at issue are material to consumers." (*Id.* at 10:5-11:2).

After the Court's rulings on the cross-motions for summary judgment, the parties disagreed over the surviving claims and the remedies that remained available to MB Imports. (D.E. Nos. 187-95). MB Imports argued that its Lanham Act claim "is brought by MB Imports as a competitor that has been damaged by Defendants' false and misleading advertising" and that it sought injunctive relief, disgorgement, and attorney's fees and costs. (D.E. No. 194). Defendants argued that, because MB Imports never raised the issue of disgorgement in its opposition, Defendants were unable to specifically address the argument in their reply. (D.E. No. 195).

On February 26, 2016, after reviewing the parties' letters, the Honorable Joseph A. Dickson, U.S.M.J., found that MB Imports properly asserted a right to the remedy of disgorgement in connection with Counts One and Three, which relate to Defendants' alleged misrepresentations to consumers. (D.E. No. 196). Defendants were permitted to address MB Imports' argument for disgorgement at trial or to file a new motion for summary judgment on this issue. (D.E. No. 196).

On March 18, 2016, Defendants filed the instant motion for summary judgment, which addresses MB Imports' claim for disgorgement of Defendants' profits in connection with Counts One and Three of the Amended Complaint. (D.E. No. 197). On April 22, 2016, MB Imports opposed Defendants' motion. (D.E. No. 201). On May 6, 2016, Defendants replied to MB Imports' opposition. (D.E. No. 202). This matter is now ripe for resolution.

## II. LEGAL STANDARD

Summary judgment is appropriate under Federal Rules Civil Procedure 56(c) when the moving party demonstrates that there is no genuine issue of material fact, and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23 (1986).[3] "[S]ummary judgment is essentially put up or shut up time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier*

---

[3] Unless otherwise indicated, all internal citations and quotations marks are omitted, and all emphasis is added.

*Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring the nonmoving party to "set out specific facts showing a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

### III.   DISCUSSION

#### I.   The Parties' Arguments

As a threshold matter, Defendants contend that since the Court "has determined as a matter of law that Plaintiff did not show it suffered any damages as a result of Defendants' advertising," MB Imports is not entitled to disgorgement of its profits. (D.E. No. 197, Brief of Defendants in Support of Their Motion for Summary Judgment ("Defs. Mov. Br.") at 13). Defendants also argue that "[r]ecovery of Defendants' profits is subject to the same analysis as Plaintiff's lost profits under [15 U.S.C. 1117(a)]" and, therefore, MB Imports "must show actual damages rather than a mere tendency to be damaged." (*Id.* at 12) (citing *Synygy v. Scott-Levin*, 51 F. Supp. 570, 575 (E.D. Pa. 1999)). Lastly, Defendants argue that this is not an exceptional case that would permit Plaintiff to recover attorney's fees. (*Id.* at 26-27).

Plaintiff responds that the only causation it is required to show in order to disgorge Defendants' profits is "that portion of [the Defendants'] profits attributable to the willful and intentional false advertising." (D.E. No. 201, Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp. Br.") at 22-23 (quoting *Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F. Supp. 2d 332, 344 (D.N.J. 2001)). With respect to attorney's fees, Plaintiff argues that Defendants' motion regarding attorney fees is premature and should be decided after the remaining claims have been fully litigated. (*Id.* at 35-39).

**II.  Analysis**

The Lanham Act[4] provides for both injunctive relief and monetary damages. *See* 15 U.S.C. §§ 1116(a), 1117(a). An injunction is the "usual and standard remedy," and "the common historical practice has been that a prevailing plaintiff in a case of . . . false advertising will ordinarily receive injunctive relief of some kind." *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 479 (D.N.J. 2009). With respect to causation, "a plaintiff suing to enjoin conduct that violates the Lanham Act need not prove specific damage." *Id.* at 480.

The Lanham Act also provides that a "plaintiff shall be entitled to recover damages in an action, subject to the principles of equity, [including] to recover defendant's profits." *Bracco*, 627 F. Supp. 2d at 480; *see also* 15 U.S.C § 1117(a). The causation standard for a damages award is higher than that for injunctive relief—"courts require a heightened level of proof of injury in order to recover money damages." *Bracco*, 627 F. Supp. 2d at 480 (citing *Porous Media Corp. v. Pall Corp.,* 110 F.3d 1329, 1335 (8th Cir. 1997); *Parkway Baking v. Freihofer Baking,* 255 F.2d 641,

---

[4] Count Three of the Amended Complaint asserts a violation of the New Jersey Unfair Competition Statute, N.J.S.A. 56:4-1, *et seq.* Claims under the New Jersey Unfair Competition Statute are reviewed under the same standard as the Lanham Act. *J & J Snacks Foods Corp. v. Nestle USA, Inc.*, 149 F. Supp. 2d 136, 157 (D.N.J. 2001) (finding that failure to meet the elements for a claim under the Lanham Act resulted in a failure to meet the elements of the New Jersey Unfair Competition Statute). Moreover, the parties agree that the Lanham Act provision pleaded in Count One is equivalent to the New Jersey Unfair Competition Statute, which is alleged in Count Three. (D.E. 186, at 2:17-24). Accordingly, the outcome of Count One governs Count Three.

648-49 (3d Cir. 1958)).  Thus, to obtain monetary relief in the form of Defendants' profits, MB Imports must link the alleged "deception with actual harm to its business." *Labware v. Thermo Labsystems, Inc.*, No. 04-2545, 2005 WL 1541028, at *12 (E.D. Pa. 2005); *see also Steak Umm Co., LLC v. Steak'em Up, Inc.*, No. 09-2857, 2011 WL 3679155, at *10 (E.D. Pa. Aug. 23, 2011) ("[A] Plaintiff may be able to prove a violation of the Lanham Act, without providing evidence sufficient for an award of damages."); *Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F. Supp. 2d 332, 341 n.8 (D.N.J. 2001) (stating that "in order to avail itself of disgorgement of profits and attorney's fees, [a plaintiff] has the burden of proving by clear and convincing evidence that such remedies are warranted").

After establishing both a violation of the Lanham Act and actual harm to its business, the Third Circuit explains that "an accounting of an infringer's profits is available if the defendant is unjustly enriched, if the plaintiff has sustained damages, or if an accounting is necessary to deter infringement." *Marshak v. Treadwell*, 595 F.3d 478, 495 (3d Cir. 2009); *see also Banjo Buddies, Inc.*, 399 F.3d 168, 178 (3d Cir. 2005) ("These rationales are stated disjunctively; any one will do.").  If both prongs are established, the plaintiff then "shall be required to prove defendant's sales only."  15 U.S.C. § 1117(a); *see also Banjo Buddies, Inc.*, 399 F.3d at 175 ("[T]here is no requirement that defendant's profits approximate the plaintiff's damages.").

Upon establishing a violation of the Lanham Act, actual harm to its business, and proving the defendant's sales, courts must nevertheless consider whether disgorgement of profits is appropriate. *See* 15 U.S.C. § 1117(a) (stating that disgorgement is subject to the principles of equity); *Steak Umm Co., LLC*, 2011 WL 3679155, at *10 ("Disgorgement of profits is an equitable remedy that lies within the discretion of the court.").  The Third Circuit has provided the following six non-exhaustive factors to determine whether disgorgement is appropriate: "(1) whether the

defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." *Banjo Buddies, Inc.*, 399 F.3d at 175.

### i. Disgorgement

To preclude Plaintiff's from seeking disgorgement, Defendants claim—without any citation—that "[t]he Court has determined as a matter of law that Plaintiff did not show it suffered any damages as a result of Defendants' advertising." (Defs. Mov. Br. at 13). But the Court made no finding in its prior ruling as to Plaintiff's damages suffered as a result of Defendants' advertising generally.[5] (*See* D.E. No. 186). Rather, the Court held that "no reasonable factfinder could find that Safeway relied on Defendants' alleged misrepresentations in deciding to sell *Tantillo* lemon and lime juice products."[6] (D.E. No. 186 at 9:17-23).

In any event, the Court agrees with Defendants that MB Imports is not entitled to disgorgement of Defendants' profits because Plaintiff has failed to demonstrate that Defendants' false advertising caused Plaintiff any harm. "[A] party that fails to provide 'at least some evidence of harm arising from Defendant's violation' may not receive an award of profits or damages." *KoninKijke Philips Electronics N.V. v. Hunt Control Systems, Inc.*, No. 11-3684, 2016 WL

---

[5] The Court did, however, clarify that Plaintiff's "allegations are not that all of a sudden the company took a nosedive in other areas, in other [stores]" because, ultimately, the record and arguments before the Court focused around the loss of the Safeway account. Plaintiff's counsel agreed with this characterization: "That is the case." (D.E. 183 at 36:16-23).

[6] The Court made no specific finding as to whether Plaintiff suffered any damages as a result of Defendants' advertising generally because Plaintiff's counsel admitted that, "in terms of injury," the injury was limited to the loss of the Safeway account. (D.E. 186 at 36:1-4). Moreover, with respect to consumers, the Court denied Defendants' motion for summary judgment because "genuine issues of material fact exist as to whether the current lemon juice labels and previous lime juice labels still being used in advertising are false or misleading" and "whether, if false or misleading, the representations at issue are material to consumers." (*Id.* at 10:19-25). Thus, the Court permitted MB Imports' Lanham Act claim to proceed with respect to consumers and made no findings as to whether Plaintiff suffered damages as a result of Defendants' false advertising to consumers. (*See Id.* at 10:25-11:2).

3545529, at *23 (D.N.J. June 29, 2016) (citing *Cesars World, Inc. v. Venus Lounge, Inc.*, 520 F.2d 269, 274 (3d Cir. 1975)).  Here, Plaintiff asserts only that it has been harmed because its income has declined as a result of diverted sales "from customers of A&P, bodegas in New York City, and fruit and vegetable markets around the country, including Hunts Point Market, in New York, where both the *Sicilia* and *Tantillo* brand juices are sold." (Pl. Opp. Br. at 17).  Without more, MB Imports is not entitled to disgorgement of Defendants' profits because Plaintiff has failed to demonstrate that it suffered any harm as a result of Defendants' alleged false advertising.[7]  *See Labware v. Thermo Labsystems, Inc.*, No. 04-2545, 2005 WL 1541028, at *12 (E.D. Pa. 2005) (stating that damages cannot exist without a nexus between a false advertisement and an adverse purchasing decision).

The Court cannot accept Plaintiff's invitation to assume "the linkage between Defendants' acts . . . and loss of sales by [Plaintiff] to these customers." (Pl. Opp. Br. at 17).  In a suit for relief under 15 U.S.C. 1117(a), "actual evidence of some injury resulting from the deception is an *essential* element of the plaintiff's case."  *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989).  Here, the Court acknowledges Plaintiff's request to ignore an essential element of its claim (Pl. Opp. Br. at 17), but the Court refuses to assume—without any citation to the record or law—that any of Defendants' profits necessarily correspond to Plaintiff's lost sales and Plaintiff "cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (stating that summary judgment is "essentially put up or shut up time for the non-moving party").

---

[7] Indeed, Plaintiff's counsel conceded as much at oral argument. When asked by the Court, "What is the injury as it relates to the deception to the consumers?," Plaintiff's counsel stated that "the injury, per se, in terms of quantifiable damages claim, I can't, with a straight face, argue that before you. But there is . . . another relief for consumers that we do argue, both on behalf of MB imports and on behalf of consumers and that is the injunctive power the court has." (D.E. No. 183, 41:17-25).

Simply put, Plaintiff's claim for disgorgement of lost profits fails because the Court will not assume that any of Defendants' sales would have gone to Plaintiff but-for the false advertisement or deceptive act. *See Eckel Industries, Inc. v. Primary Bank*, 26 F. Supp. 2d 313, 317 (D.N.H. 1998) ("[A]warding the plaintiff monetary damages in such a case could provide a windfall, which should be avoided in Lanham [Act] cases."). *See also Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1335-36 (8th Cir. 1997) (explaining that "[i]n a suit for money damages where a defendant misrepresented its own product but did not specifically target a competing product, plaintiff may be only one of many competitors, and without proof of causation and specific injury each competitor might receive a windfall unrelated to its own damage").

To avoid demonstrating "at least some evidence of harm arising from Defendant's violation," Plaintiff argues that "the only causation required for disgorgement is that the plaintiff show that portion of the defendant's profits attributable to the willful and intentional false advertising." (Pl. Opp. Br. at 23). Although Plaintiff cites *Marshak v. Treadwell*, 595 F.3d 478, 495 (3d Cir. 2009) in support of this proposition, *Marshak* is inapplicable.

*Marshak* concerns the "breadth of [an] injunction and efficacy of the remedies" years after a trademark holder established he was harmed by the opposing party's trademark infringement. *Id.* at 482, 484. Because infringement to the plaintiff's trademark was already proven, the plaintiff there was "only required to show that an accounting was necessary to deter infringement or that [Defendant] and his associates were unjustly enriched." *Id.* at 494-95. Here, even if Plaintiff is able to establish that Defendants violated the Lanham Act, the record fails to establish any causal nexus between Defendants' alleged false advertising affecting consumers and any harm to Plaintiff's sales. *See Steak Umm Co., LLC*, 2011 WL 3679155, at *10 ("[A] Plaintiff may be able

14

to prove a violation of the Lanham Act, without providing evidence sufficient for an award of damages.")

Thus, the Court grants Defendants' motion for summary judgment on Plaintiff's claim for disgorgement of Defendants' profits because Plaintiff has failed to offer any evidence for a reasonable factfinder to conclude that Defendants' alleged misrepresentations regarding the current lemon juice label and previous lime juice label caused Plaintiff "actual damages rather than a mere tendency to be damaged." *Bracco*, 627 F. Supp. 2d at 480. The Court will enter judgment in favor of Defendants on the availability of disgorgement as a remedy in this case.[8]

### ii. Plaintiff's Entitlement to Attorney's Fees

The Lanham Act provides that a "court in exceptional circumstances may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Court "may find a case exceptional, and therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an unreasonable manner." *Fair Wind Sailing, Inc. v. Demspter*, 764 F.3d 303, 315 (3d Cir. 2014). In deciding whether an exceptional circumstance exists, district courts must exercise their discretion in a "case-by-case" basis and "consider[] the totality of the circumstances." *Id.* (citing *Octane Fitness, LLC v. ICON Health & Fitness*, Inc., 134 S. Ct. 1749, 1756 (2014)).

Granting summary judgment on the issue of attorney's fees at this stage would be premature. Contrary to Defendants' arguments (Def. Reply Br. at 15), a plaintiff seeking attorney's fees need not demonstrate that the alleged infringing behavior was intentional. *Fair Wind Sailing, Inc.*, 764 F.3d at 315 (explaining that the court's discretion to award attorney's fees

---

[8] Because the Court finds that Plaintiff failed to make a showing of harm to be entitled to disgorgement of Defendants' profits, the Court need not address whether the *Banjo Buddies, Inc.* factors demonstrate that equity requires disgorgement.

is not cabined by a threshold requirement that the party acted culpably). Nor does Plaintiff need to show the existence of damages to be entitled to such fees. *Ferrero U.S.A., Inc., v. Ozak Trading, Inc.*, 952 F.2d 44, 49 (3d Cir. 1991) (finding only that the absence of proven damages "bears on the appropriateness" of an award of attorney fees).

Viewing the evidence in a light most favorable to Plaintiff, the Court could find the existence of culpable conduct if Defendants are still broadcasting their original commercial featuring their *Tantillo* lime juice on the internet. (*See* Pl. SMF ¶¶ 237-41, 272, 276-77, 284-308; LB Dec. ¶¶ 5-9, Exs. 4-8). Perhaps most importantly, other claims remain to be litigated, and it is not appropriate for the Court to make a determination that this case is not exceptional as a matter of law prior to adjudicating these claims.

To be sure, the Court does not hold that Plaintiff's case is an exceptional one, but at this juncture Defendants have not satisfied their burden of showing that it is not. Accordingly, Defendants' motion for summary judgment on the issue of attorney's fees is denied.

### IV. CONCLUSION

For the foregoing reasons, the Court grants-in-part and denies-in-part Defendants' motion for summary judgment. Defendants' Second Motion for Summary Judgment is granted as it relates to Plaintiff's claim for disgorgement of Defendants' profits but denied as it relates to attorney's fees.

*s/Esther Salas*  
**Esther Salas, U.S.D.J.**